**A.Y. STRAUSS LLC**
Eric H. Horn, Esq.
Heike M. Vogel, Esq.
Jordan M. Engelhardt, Esq.
535 Fifth Avenue, 4th Floor
New York, New York 10017
Tel. (973) 287-5006
Fax  (973) 226-4104

*Proposed Counsel to the Debtor and*
*Debtor-in-Possession*

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>Linden Center LLC,<br><br>      Debtor. | Chapter 11<br><br>Adversary Proceeding<br>Case No. 23-_____<br><br>Associated with<br>Case No. 1-23-41820-ess |
| Linden Center LLC,<br><br>      Plaintiff,<br><br>            v.<br><br>Ching Lam (a/k/a Henry Lam); Choy Ling Lam (a/k/a Rita Lam); Wei, Wei & Co., LLP; Sky Capital Group Inc.,<br><br>      Defendants. | **COMPLAINT** |

Linden Center LLC, debtor and debtor-in-possession in the above-captioned bankruptcy

proceeding (the "Debtor"), and as plaintiff in the above-captioned adversary proceeding, hereby

alleges, upon its own knowledge or upon information and belief, as follows:

## PRELIMINARY STATEMENT

1.      This is an adversary proceeding seeking injunctive relief and declaratory judgment against the former managers of the Debtor, Ching Lam a/k/a Henry Lam ("Henry Lam") and Choy Ling Lam a/k/a Rita Lam ("Rita Lam," and together with Henry Lam, the "Lams").  The Lams are unlawfully withholding the books and records and other property of the Debtor from the Debtor's current President, in disregard of a duly issued company resolution and in violation of a Turnover Order previously issued by the court in the underlying bankruptcy.  *See* Turnover Order (Dkt. No. 22), *In re: Linden Center LLC*, Case No. 1-23-41820-ess.

2.      In this adversary proceeding, the Debtor also seeks to enjoin the Lams from any unauthorized collection of rent monies or other interference with the Debtor's finance and affairs, and to recover fraudulent conveyances under the New York Debtor and Creditor Law (the "NYDCL") and unauthorized transfers under the Bankruptcy Code.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This adversary proceeding is commenced pursuant to Bankruptcy Rule 7001(7), and Plaintiff consents to entry of a final order or judgment by the Bankruptcy Court in this matter.

4.      The Debtor's Chapter 11 case No. 1-23-41820-ess is currently pending in the United States Bankruptcy Court for the Eastern District of New York.

5.      Venue is proper in this district under 28 U.S.C. § 1409(a), in that the bankruptcy case is pending in this district.

## PARTIES

6.      Plaintiff is the Debtor in the bankruptcy case.

7.      Defendant Ching Lam *a/k/a* Henry Lam is an individual who resides at 125 Jefferson Street, Garden City, NY 11530.

8.    Defendant Choy Ling Lam *a/k/a* Rita Lam is an individual who resides at 125 Jefferson Street, Garden City, NY 11530.

9.    Defendant Wei, Wei & Co., LLP is a limited liability partnership with a principal place of business at 133-10 39th Avenue, Flushing, New York 11354.

10.    Defendant Skyline Capital Group Inc. is a corporation with a principal place of business at 2329 Nostrand Avenue c/o Smart Space Suite 211, Brooklyn, New York 11210.

## REQUESTED RELIEF AND THE BASES THEREFOR

11.    Debtor has commenced this adversary proceeding in accordance with Bankruptcy Rule 7001.

12.    The statutory bases for relief requested herein are sections 105(a), 541, and 542 of the Bankruptcy Code.

13.    Additional statutory bases for relief include sections 273, 276, and 276-a of the NYDCL.

14.    This adversary proceeding seeks an Order:

(a)    finding that Defendants Ching Lam (*a/k/a* Henry Lam) and Choy Ling Lam (*a/k/a* Rita Lam) have unlawfully refused to recognize Howard Konicov as President of the Debtor with sole authority to manage the affairs and finances of the Debtor, in willful disregard for the duly issued resolution of the Debtor's super-majority member appointing Mr. Konicov President of the Debtor and authorized representative of the Debtor in the bankruptcy proceeding and removing all prior officers from management, and in contempt of the Court's Agreed Order Approving Debtor's Application Directing the Preservation and Turnover of Documents Pursuant to Sections 541 and 542 of the Bankruptcy Code entered June 13, 2023 in the underlying core bankruptcy proceeding (*see* Dkt. No. 22, *In re: Linden Center LLC*, Case No. 23-41820-ess);

(b)      directing Defendants Ching Lam (*a/k/a* Henry Lam), Choy Ling Lam (*a/k/a* Rita Lam), Wei, Wei & Co., LLP, and Sky Capital Group Inc. immediately:

i.      to comply with the Agreed Order Approving Debtor's Application Directing the Preservation and Turnover of Documents Pursuant to Sections 541 and 542 of the Bankruptcy Code entered June 13, 2023 in the underlying core bankruptcy proceeding (*see* Dkt. No. 22, *In re: Linden Center LLC*, Case No. 23-41820-ess);

ii.     to preserve all property of the Debtor's estate, including the Debtor's books and records, including but not limited to cash disbursement journals, cash receipt journals, historical bank statements, general ledgers, tenants' receivable subsidiary ledgers, accounts payable subsidiary ledgers, insurance policies, historical financial statements, tax returns, leases, security deposits) whether in hard copy or electronic form;

iii.    to surrender to the Debtor's President and Authorized Representative, Howard Konicov, all property of the Debtor's estate, including but not limited to the Books and Records (including but not limited to cash disbursement journals, cash receipt journals, historical bank statements, general ledgers, tenants' receivable subsidiary ledgers, accounts payable subsidiary ledgers, insurance policies, historical financial statements, tax returns) whether in hard copy or electronic form;

iv.     to cease and desist from any attempts at collecting rents generated by the Debtor's real property located at 33-37 Farrington Street (a/k/a 34-20 Linden Place), Flushing, New York, 11354 (Block 4950 and Lot 18) (the "Premises");

v.      to cease and desist from any attempts at managing, controlling, or interfering with the business affairs of the Debtor, the property of the Debtor's estate, or the Premises, including but not limited to discussing Debtor's sales efforts with existing tenants, potential purchasers, or other third parties;

vi.     to direct all tenants and other third parties that attempt to contact any of the above-named Defendants about the affairs of the Debtor or the property of the Debtor's estate to communicate solely with the Debtor's President, Howard Konicov, concerning such matters going forward; and

vii.    to vacate the Premises;

(c)      directing Defendant Wei, Wei, & Co., LLP immediately:

i.      to identify the services they have provided, or continue to provide, to the Debtor, Prince USA Group LLC ("Prince") or any Defendant;

ii.    to communicate transparently with the Debtor's President, Howard Konicov, concerning the Debtor's finances; and

iii.   to provide the Debtor's President, Howard Konicov, any financial information concerning the Debtor in their possession, upon Mr. Konicov's request;

(d)    directing Defendant Skyline Capital Group Inc. immediately to provide the Debtor's President, Howard Konicov, any financial or insurance information or insurance policy-related documents concerning the Debtor in their possession, upon Mr. Konicov's request;

(e)    authorizing the Debtor immediately to change the locks to the business offices located at the Premises and refuse entry to the office to anyone other than Howard Konicov;

(f)    directing Defendants Ching Lam (*a/k/a* Henry Lam) and Choy Ling Lam (*a/k/a* Rita Lam) immediately to perform a full and accurate accounting of the Debtor's affairs for the period of November 17, 2017 to the present;

(g)    entering a money judgment against Defendants Ching Lam (*a/k/a* Henry Lam) and Choy Ling Lam (*a/k/a* Rita Lam) for monies had and received in an amount to be determined at trial plus interest, costs, attorneys' fees, and any other relief that the Court determines to be just and proper; and

(h)    entering a judgment of contempt against Defendants Ching Lam (*a/k/a* Henry Lam) and Choy Ling Lam (*a/k/a* Rita Lam) for failure to comply with the Court's June 13, 2023 Turnover Order.

## FACTUAL BACKGROUND

15.    On May 23, 2023, (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

16.    The Debtor continues in possession of its property and the management of its business affairs as a debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

17.     No trustee, examiner, or statutory committee has been appointed.

**A.     The Debtor's Ownership**

18.     The ownership of the Debtor is as follows: (i) 80% by Prince USA Group LLC ("Prince"); and (ii) 20% by Linden Tech LLC (owned by David Wong).

19.     The following individuals are members of Prince USA Group LLC: Defendant Ching Lam *a/k/a* Henry Lam; Defendant Choy Ling Lam *a/k/a* Rita Lam; Yong Chun Guo; and Suet Man Chan.

**B.     The Debtor's Real Property**

20.     The Debtor is the owner of a certain real property located at 33-37 Farrington Street (a/k/a 34-20 Linden Place), Flushing, New York, 11354 (Block 4950 and Lot 18) (the "Premises"). The Premises was acquired in 2017 for approximately $21 million from a bankruptcy estate.

21.     The Premises is a multi-story commercial retail building that may currently be occupied by multiple commercial tenants, including dining and entertainment establishments, and an adult social day care center and a doctor's office (each a "Tenant" and collectively, the "Tenants").

22.     Under the various leases, the Tenants are to pay the Debtor approximately $147,000 in monthly rental payments.

**C.     Debtor's Secured Debt Obligations**

23.     In connection with the acquisition of the Premises, the Debtor, as borrower, and Dime Bank, as lender, entered into certain loan documents dated as of November 17, 2017, pursuant to which Dime Bank loaned to the Debtor the principal amount of $12,975,000.

24.     The loan is secured by a certain mortgage on the Premises. The Lams are guarantors of this debt obligation.

25.     The loan provides for payment of interest at a rate of 4.75% per annum, with monthly payments of approximately $74,484.80.

26.     The loan matures on December 1, 2024 and any unpaid amounts under the loan facility are due in full at that time.

27.     The Lams did not make mortgage payments for over a year.  As a result, the loan is in default.

28.     Sioni Capital LLC ("Sioni"), on April 20, 2022, acquired the loan from Dime Bank via an assignment, with such assignment being recorded in the Office of the Queens County Register on July 19, 2022.

29.     As of January 2023, Sioni asserts that the amount owing under the loan is approximately $16.15 million.

**D.     Debtor's Management**

30.     As of the Petition Date, Howard Konicov is responsible to manage the Debtor as President of the Debtor.

31.     Prior to Mr. Konicov's appointment, the Debtor was managed by Mr. Lam and/or Mrs. Lam, and before that by Mr. David Wong.  Due to what appears to be a mismanagement of the Debtor by the Lams, including failure to pay mortgage obligations pursuant to an agreed upon schedule, delinquency in tax payments and diversion of rents, the Lams were removed from their officer/management positions just prior to Mr. Konicov's appointment.

32.     Further, as a result of the Lams' default under multiple agreements relating to financial obligations guaranteed by Prince, the Lams lost their voting rights in Prince, the 80% member of the Debtor.  As such, Yong Chun Guo may exercise the Lams' voting rights in Prince.

33.    Specifically, in connection with a Confidential Settlement Agreement entered into among the Lams, Mr. Guo, and Prince, the Lams and Prince entered into a Membership Interest Pledge and Security Agreement (the "Security Agreement").

34.    Section 3 of the Security Agreement provides that "[u]pon the occurrence of an event of Default, the Pledgee [Mr. Guo] or the Pledgee's nominee may immediately exercise all voting and limited liability company rights at any meeting of the members of the Company, but the Pledgee shall have no duty to exercise any of said rights, and shall not be responsible for any such exercise, for any failure to do so, or for any delay in doing so." *See* Konicov Aff. Exhibit 2.[1]

35.    Mr. Guo is Prince's largest creditor.  In turn, Prince's ownership of the Debtor may be Prince's only asset of value.  Indeed, Prince and the Lams owe more than $5,000,000 to Mr. Guo, as evidenced by a judgment entered last year in Queens County against each of them (the "Judgment").  *See* Konicov Aff. Exhibit 3.

36.    The Lams' actions have significantly impaired the equity value of the Debtor. Under their stewardship, the Lams failed to pay utilities and taxes, diverted rents, and have not paid the Debtor's secured creditor – Sioni Capital – for that last 1.5 years.  As a result of such mismanagement, the Debtor is now paying approximately 24% in interest on its mortgage.

37.    By virtue of Mr. Guo's rights under section 3 of the Security Agreement, and in light of the continuing defaults of Prince and the Lams, Mr. Guo may exercise 97% of Prince's voting rights (*i.e.*, his own and the Lams' voting rights in Prince).  This is more than the 61% required for the Debtor to commence a chapter 11 petition and more than the majority required to install a new officer of the Debtor.

---

[1] All references to the "Konicov Aff." and its exhibits refer to the accompanying Declaration of Howard Konicov dated June 20, 2023 and the exhibits thereto.

38.     As such, on May 23, 2023, Mr. Guo executed the Resolution appointing Mr. Konicov as President of the Debtor and Authorized Representative of the Debtor in connection with the bankruptcy proceeding.

**E.     The Turnover Order**

39.     The same day the Resolution was executed, the Debtor filed a Chapter 11 bankruptcy petition.  Immediately upon the filing of the petition, Mr. Konicov requested that the Lams provide access to the Debtor's books and records in his capacity as President of the Debtor.

40.     On May 25, 2023, Mr. Konicov met with Mr. Lam at the Debtor's Premises.  During the May 25, 2023 meeting, Mr. Konicov provided Henry Lam a hard-copy information request itemizing the books and records that he needed to inspect to fulfill his responsibilities as President of the Debtor and to carry out the Bankruptcy.  *See* Konicov Aff. Exhibit 4.

41.     During that May 25, 2023 meeting, Mr. Konicov discovered a check issued by a Tenant that was made payable to the Lams, instead of the Debtor.  Based on that discovery, Mr. Konicov believes that the Lams may be diverting estate monies for their own benefit.

42.     Additionally, during the meeting, the Lams' counsel communicated to Mr. Konicov that the Lams would get back to him as to whether they would cooperate with the Debtor in connection with the Bankruptcy.

43.     Following such meeting, on the same date, counsel to the Debtor emailed a letter to the Lams' counsel, which reiterated Mr. Konicov's desire to work with the Lams and requested turnover of the Debtor's books and records to carry out the Debtor's obligations in the Bankruptcy.  *See* Konicov Aff. Exhibit 5.

44.     The Lams have continually since that time refused to recognize Mr. Konicov as President of the Debtor or cooperate with him.

45.    Further, Mr. Konicov discovered that the Lams have been communicating with the Debtor's Tenants, including by demanding that June 2023 rent be submitted to the Lams, and not to Mr. Konicov.

46.    The rents of the Premises are property of the Bankruptcy estate and are crucial to the successful reorganization of the Debtor.

47.    Due to the Lams' refusal to provide Mr. Konicov access to the Debtor's books and records or to refrain from unlawful attempts to collect rents from the Tenants, on May 30, 2023, the Debtor made an expedited application for relief in the bankruptcy proceeding on May 30, 2023. *See* Dkt. Nos. 7-8, *In re: Linden Center LLC*, Case No. 1-23-41820-ess.

48.    By agreed order dated June 12, 2023 (the "Turnover Order," Konicov Aff. Exhibit 6), the Court directed the Lams and their agents, including their insurance broker, Defendant Sky Capital Group Inc., and their accountant, Defendant Wei, Wei, & Co., LLP, or anyone acting in concert with the Lams, as follows:

> a.  all property of the Debtor's estate, including but not limited to the Books and Records (including but not limited to cash disbursement journals, cash receipt journals, historical bank statements, general ledgers, tenants' receivable subsidiary ledgers, accounts payable subsidiary ledgers, insurance policies, historical financial statements, tax returns, leases, security deposits) whether in hard copy or electronic form, **are to be preserved**; and
>
> b.  within three (3) days of the entry of this Order, all property of the Debtor's estate, including but not limited to the Books and Records (including but not limited to cash disbursement journals, cash receipt journals, historical bank statements, general ledgers, tenants' receivable subsidiary ledgers, accounts payable subsidiary ledgers, insurance policies, historical financial statements, tax returns) whether in hard copy or electronic form, **are to be made available to the Debtor's representative Howard Konicov**.

Konicov Aff. Exhibit 6 (Turnover Order) at ¶ 2.a – 2.b. (emphases added).

49.     In addition, the Turnover Order provided that the Debtor, through Mr. Konicov as its representative, is "authorized to collect rents generated by the Debtor's Premises for the month of June 2023 and thereafter." *Id.* at ¶ 2.  The Turnover Order further provided that the Tenants at the Premises "are directed to remit such rents to the Debtor (via its representative Howard Konicov)," and to "no other party." *Id.*

**F.     The Lams' Refusal to Comply with the Turnover Order**

50.     The Lams have refused to comply with the Turnover Order, as described in the foregoing paragraphs.

51.     On June 14, 2023, Mr. Konicov visited the Premises and informed Henry Lam that the Turnover Order requires that he make the Debtor's books and records available to him by Friday, June 16, 2023 (*i.e.*, three days from its entry on June 13, 2023).  *See* Exhibit 6 (Turnover Order) at ¶ 2.b.

52.     On June 15, 2023, Mr. Konicov sent correspondence via electronic mail to the Lams stating that he would be present at the Premises to gain access to and inspect the books and records on June 16, 2023 at 2 p.m.  *See* Konicov Aff. Exhibit 7.

53.     In response to Mr. Konicov's June 15, 2023 email, Henry Lam's secretary responded that afternoon questioning Mr. Konicov's identity and authority.  Specifically, Mr. Lam's secretary wrote as follows:  "This is Mr. Lam's secretary, working for Linden Center LLC. I received your email from Linden Center LLC. But I don't know who you are, and why you send this email.  Please provide more info to prove you are related to Linden Center LLC and have the right to request documents as you list.  Thank you!"  Konicov Aff. Exhibit 8.

54.     On June 15, 2023 at 5:05 PM, Mr. Konicov responded to the inquiry from Henry Lam's secretary by providing a copy of the Resolution appointing him President of the Debtor and removing prior officers of the Debtor.  *See* Konicov Aff. Exhibit 8 at 1.

55.     Mr. Konicov arrived at the Premises at approximately 2:00 PM on June 16, 2023. No one was present at an unlocked business office at the Premises.  There did not appear to be any hard copy records in the unlocked office to which Mr. Konicov had access.  *See* Konicov Aff. Exhibit 9.

56.     Another office at the Premises that belonged to Henry Lam was locked at the time of Mr. Konicov's visit.

57.     Despite there being substantial business office space at the Premises apparently being utilized by Henry Lam, Mr. Konicov is not aware of any lease agreement between Mr. Lam and the Debtor.

58.     Mr. Konicov was able to speak with one Tenant of the Premises during his visit. The Tenant informed Mr. Konicov that he was not able to pay Mr. Konicov the June 2023 rent, claiming his attorney had not yet reviewed the Turnover Order.

59.     Shortly after arriving at the Premises and determining that neither Henry Lam nor his representative was present to meet with him, Mr. Konicov attempted to call Henry Lam concerning his planned visit to inspect the Debtor's books and records pursuant to the Turnover Order.  Mr. Konicov could not reach Henry Lam by phone.

60.     Mr. Konicov then sent a text message to Henry Lam informing him that Mr. Konicov would wait for 20 minutes for him to arrive at the designated appointment.  Henry Lam replied to the text message stating that he will follow the direction of his attorney only.

61.     Neither Henry Lam nor his representative arrived at the Premises during Mr. Konicov's visit on June 16, 2023.  Mr. Konicov then departed the Premises at approximately 2:45 PM without having had an opportunity to access or inspect any books and records of the Debtor.

62.     A meeting of creditors is scheduled in the Debtor's bankruptcy proceeding for June 27, 2023.  To date, Mr. Konicov has been unable to review the books and records of the Debtor because the Lams are obstructing his access.

63.     To date, Henry Lam has provided no explanation for why he was not at the Premises to meet with Mr. Konicov on June 16, 2023 to comply with the Turnover Order.  Nor have the Lams given any indication that they intend to comply with the Turnover Order or taken any steps toward compliance.  Instead, on June 17, 2023, Henry Lam provided Mr. Konicov with the name and phone number of a law firm that he said is representing him, Stone Legal Solutions.  However, no representative of this law firm has contacted Mr. Konicov on or after the compliance date of the Turnover Order, June 16, 2023.

64.     As of the date of this Complaint, the Debtor faces a deadline to file the required Schedules of Assets and Liabilities and Statement of Financial Affairs by June 23, 2023.  *See* Dkt. No. 15, *In re Linden Center LLC*, Case No. 1-23-41820-ess.  The Debtor cannot adequately complete all necessary schedules and statements without access to its books and records, which the Lams are presently withholding from the Debtor and Mr. Konicov in direct violation of the Turnover Order.

### COUNT ONE (INJUNCTIVE RELIEF)

65.     Plaintiff repeats and realleges paragraphs 1 through 64 hereof, as if fully set forth herein.

66.     Plaintiff seeks an injunction under section 105(a) of the Bankruptcy Code, for an Order:

(a)     finding that Defendants Ching Lam (*a/k/a* Henry Lam) and Choy Ling Lam (*a/k/a* Rita Lam) have unlawfully refused to recognize Howard Konicov as President of the Debtor with sole authority to manage the affairs and finances of the Debtor, in willful disregard for the duly

issued resolution of the Debtor's super-majority member appointing Mr. Konicov President of the Debtor and authorized representative of the Debtor in the bankruptcy proceeding and removing all prior officers from management, and in contempt of the Court's Agreed Order Approving Debtor's Application Directing the Preservation and Turnover of Documents Pursuant to Sections 541 and 542 of the Bankruptcy Code entered June 13, 2023 in the underlying core bankruptcy proceeding (*see* Dkt. No. 22 (the "Turnover Order"), *In re: Linden Center LLC*,  Case No. 23-41820-ess);

(b)     directing Defendants Ching Lam (*a/k/a* Henry Lam), Choy Ling Lam (*a/k/a* Rita Lam), Wei, Wei, & Co., LLP, and Skyline Capital Group Inc. immediately:

> i.     to comply with the Agreed Order Approving Debtor's Application Directing the Preservation and Turnover of Documents Pursuant to Sections 541 and 542 of the Bankruptcy Code entered June 13, 2023 in the underlying core bankruptcy proceeding (*see* Dkt. No. 22, *In re: Linden Center LLC*,  Case No. 23-41820-ess);
>
> ii.    to preserve all property of the Debtor's estate, including the Debtor's books and records, including but not limited to cash disbursement journals, cash receipt journals, historical bank statements, general ledgers, tenants' receivable subsidiary ledgers, accounts payable subsidiary ledgers, insurance policies, historical financial statements, tax returns, leases, security deposits) whether in hard copy or electronic form;
>
> iii.   to surrender to the Debtor's President and Authorized Representative, Howard Konicov, all property of the Debtor's estate, including but not limited to the Books and Records (including but not limited to cash disbursement journals, cash receipt journals, historical bank statements, general ledgers, tenants' receivable subsidiary ledgers, accounts payable subsidiary ledgers, insurance policies, historical financial statements, tax returns) whether in hard copy or electronic form;
>
> iv.    to cease and desist from any attempts at collecting rents generated by the Debtor's real property located at 33-37 Farrington Street (a/k/a 34-20 Linden Place), Flushing, New York, 11354 (Block 4950 and Lot 18) (the "Premises");
>
> v.     to cease and desist from any attempts at managing, controlling, or interfering with the business affairs of the Debtor, the property of the Debtor's estate, or the Premises, including but not limited to discussing Debtor's sales efforts with existing tenants, potential purchasers, or other third parties;

      vi.      to direct all tenants and other third parties that attempt to contact any of the above-named Defendants about the affairs of the Debtor or the property of the Debtor's estate to communicate solely with the Debtor's President, Howard Konicov, concerning such matters going forward; and

      vii.     to vacate the Premises;

(c)      directing Defendant Wei, Wei, & Co., LLP immediately:

      i.      to identify the services they have provided, or continue to provide, to the Debtor, Prince USA Group LLC ("Prince") or any Defendant;

      ii.     to communicate transparently with the Debtor's President, Howard Konicov, concerning the Debtor's finances; and

      iii.     to provide the Debtor's President, Howard Konicov, any financial information concerning the Debtor in their possession, upon Mr. Konicov's request;

(d)      directing Defendant Skyline Capital Group Inc. immediately to provide the Debtor's President, Howard Konicov, any financial or insurance information or insurance policy-related documents concerning the Debtor in their possession, upon Mr. Konicov's request.

(e)      directing Defendants Ching Lam (*a/k/a* Henry Lam) and Choy Ling Lam (*a/k/a* Rita Lam) immediately to perform a full and accurate accounting of the Debtor's affairs for the period of November 17, 2017 to the present; and

(f)      authorizing the Debtor immediately to change the locks to the business offices located at the Premises and refuse entry to the office to anyone other than Howard Konicov.

67.      Relief under section 105(a) of the Bankruptcy Code is proper in a Chapter 11 case when necessary to protect a debtor's ability to effectively reorganize and preserve property of the debtor's estate.

68.      If Defendants are not enjoined, Debtor will likely suffer irreparable harm and its reorganization efforts will be threatened, including but not limited to the risk that:

      (a) The books and records of Debtor will be destroyed;

(b) Defendants will divert rent payments from Debtor for their own enrichment;

(c) Debtor will not be able to participate in its own bankruptcy proceeding in a fully informed manner; and/or

(d) Debtor will suffer from unauthorized management by Defendants.

69.    The likelihood of irreparable harm to the Debtor in the absence of injunctive relief far outweighs any harm to Defendants.  Defendants will suffer little or no harm if they are enjoined until further order of the court.

70.    Debtor has a substantial likelihood of reorganizing if Defendants are enjoined.

### COUNT TWO (DECLARATORY JUDGMENT)

71.    Plaintiff repeats and realleges paragraphs 1 through 70 hereof, as if fully set forth herein.

72.    Plaintiff seeks an order pursuant to section 105(a) of the Bankruptcy Code declaring that:

a.    Howard Konicov is President of the Debtor and authorized representative of the Debtor for purposes of the bankruptcy proceeding,  with sole authority to manage the affairs and finances of the Debtor and carry out the bankruptcy proceeding, with full authority to take possession of the Debtor's books and records, and with sole authority to collects rents from the Tenants of the Premises on behalf of the Debtor;

b.    All prior officers of the Debtor, including without limitation Defendants Ching Lam (*a/k/a* Henry Lam) and Choy Ling Lam (*a/k/a* Rita Lam),  have been duly removed from management and have no authority over the affairs or finances of the Debtor and no right to possess the books and records of the Debtor; and

     c.     Defendants Ching Lam (*a/k/a* Henry Lam) and Choy Ling Lam (*a/k/a* Rita Lam) have unlawfully refused to recognize Howard Konicov as President of the Debtor in willful disregard for the duly issued resolution of the Debtor's super-majority member appointing Mr. Konicov President of the Debtor and authorized representative of the Debtor in the bankruptcy proceeding and removing all prior officers from management, and in violation of the Court's Turnover Order, Dkt. No. 22, *In re: Linden Center LLC*, Case No. 23-41820-ess.

73.     The declaratory judgment is warranted because the Lams have to date refused to recognize the authority of Mr. Konicov as President of the Debtor in the absence of a court order.

74.     The declaratory judgment is further warranted because the Lams have already demonstrated willingness to disregard the Turnover Order.

## COUNT THREE (UNJUST ENRICHMENT)

75.     Plaintiff repeats and realleges paragraphs 1 through 74 hereof, as if fully set forth herein.

76.     On May 25, 2023, Mr. Konicov discovered that at least one Tenant had made a rent payment directly to the Lams, rather than the Debtor.

77.     Debtor has good cause to believe that the Lams are diverting one or more rent payments from one or more Tenants from the Debtor to themselves.

78.     Debtor has good cause to believe that the purpose of this diversion of rent payments is to enrich the Lams at the expense of the Debtor.

79.     The Lams have not made any payments to the Debtor to compensate for receiving any unauthorized rent payments.

80.     All rent payments are the property of the Debtor's estate.

81.     The Lams were unjustly enriched by the rent payments.

82.     Equity requires the Lams to return the rent payments to the Debtor.

### COUNT FOUR (CONVERSION)

83.     Plaintiff repeats and realleges paragraphs 1 through 82 hereof, as if fully set forth herein.

84.     The Debtor is and was legally entitled to rent payments made by the Tenants.

85.     The rent payments are specific and identifiable funds.

86.     The Debtor has an immediate right of possession to the rent payments.

87.     Debtor has good cause to believe that Lams deprived the Debtor of these rent payments by taking checks for rent made directly to the Lams.

88.     The Lams were not authorized to collect rent payments on behalf of the Debtor for their own use.

89.     Therefore, the Lams have converted the rent payments, and those monies must be returned to the Debtor as a disgorgement of ill-gotten gains.

### COUNT FIVE (FRAUDULENT CONVEYANCE PURSUANT TO NYDCL § 273)

90.     Plaintiff repeats and realleges paragraphs 1 through 89 hereof, as if fully set forth herein.

91.     Debtor has good cause to believe that the Lams have diverted rent payments owed to the Debtor by Tenants at the Premises to themselves.

92.     Debtor became further insolvent as a result of the diversion of rent payments by the Lams, and/or the Lams diverted rent payments while the Debtor was insolvent.

93.     Each payment from Tenants to the Lams was made without fair consideration.

94.     By virtue of the foregoing, pursuant to 11 U.S.C. § 544(b) and NYDCL § 273, Plaintiff is entitled to a judgment avoiding the fraudulent transfers and awarding Plaintiff damages in a sum to be determined at trial.

### COUNT SIX (FRAUDULENT CONVEYANCE PURSUANT TO NYDCL § 276)

95.     Plaintiff repeats and realleges paragraphs 1 through 94 hereof, as if fully set forth herein.

96.     Debtor has good cause to believe that the Lams had actual intent to hinder, delay, or defraud the present or future creditors of the Debtor when they accepted rent payments owed to the Debtor directly to themselves.

97.     By virtue of the foregoing, pursuant to 11 U.S.C. § 544(b) and NYDCL § 276, Plaintiff is entitled to a judgment avoiding the fraudulent transfers and awarding Plaintiff damages in a sum to be determined at trial.

### COUNT SEVEN (ATTORNEYS' FEES PURSUANT TO NYDCL § 276-a)

98.     Plaintiff repeats and realleges paragraphs 1 through 97 hereof, as if fully set forth herein.

99.     On information and believe, the payments made by Tenants directly to the Lams were made with the actual intent to hinder, delay, or defraud the present or future creditors of the Debtor.

100.    By virtue of the foregoing, pursuant to 11 U.S.C. § 544(b) and NYDCL § 276-a, Plaintiff is entitled to a judgment in the amount of the attorney's fees and expenses it incurs in connection with this action.

### COUNT EIGHT (VIOLATION OF 11 U.S.C. § 541)

101.    Plaintiff repeats and realleges paragraphs 1 through 100 hereof, as if fully set forth herein.

102.    Section 541 of the Bankruptcy Code provides that a debtor's estate is comprised of, subject to certain exceptions, "all legal or equitable interests of the debtor as of the commencement of the case." 11 U.S.C. § 541(a)(1).

103.    Debtor has good cause to believe that the Lams accepted rent monies owed to the Debtor from one or more of Debtor's Tenants paid directly to themselves.

104.    The Debtor has legal and equitable interest in the funds collected by the Lams.

105.    Therefore, pursuant to 11 U.S.C. § 541(a), the rent monies are property of the Debtor's estate.

## COUNT NINE (EQUITABLE ACCOUNTING)

106.    Plaintiff repeats and realleges paragraphs 1 through 105 hereof, as if fully set forth herein.

107.    The Debtor is a New York limited liability company in the business of serving as the owning entity for the Premises.

108.    The Lams were prior managers of the Debtor, and pursuant to the loan on the Premises, were responsible for making payments on the loan.

109.    As such, the Defendants Ching Lam (*a/k/a* Henry Lam) and Choy Ling Lam (*a/k/a* Rita Lam) held the trust and confidence of the Debtor.

110.    Linden Center LLC requires an accounting because Debtor has good cause to believe that the Lams have been using the Debtor's rent monies to enrich themselves.

111.    Debtor has good cause to believe that the Lams breached their fiduciary duty to Debtor and violated their position of trust and confidence by collecting rent payments owed to Debtor and diverting them for their own purposes.  Further, the Lams have refused to recognize the authority of Mr. Konicov as President and are actively obstructing him from obtaining access to the books and records.

112.    Debtor has no adequate remedy at law because it is impossible to ascertain the damage that the Lams have caused through mismanagement without an accounting for their activity while managing the Debtor.

113.    As such, Plaintiff demands an Order directing the Lams to perform a full and accurate accounting of the Debtor's affairs from November 17, 2017 to the present.

**WHEREFORE**, Plaintiff demands judgment against Defendants for an Order:

(a)    finding that Defendants Ching Lam (*a/k/a* Henry Lam) and Choy Ling Lam (*a/k/a* Rita Lam) have unlawfully refused to recognize Howard Konicov as President of the Debtor with sole authority to manage the affairs and finances of the Debtor, in willful disregard for the duly issued resolution of the Debtor's super-majority member appointing Mr. Konicov President of the Debtor and authorized representative of the Debtor in the bankruptcy proceeding and removing all prior officers from management, and in violation of the Court's Agreed Order Approving Debtor's Application Directing the Preservation and Turnover of Documents Pursuant to Sections 541 and 542 of the Bankruptcy Code entered June 13, 2023 in the underlying core bankruptcy proceeding (*see* Dkt. No. 22 (the "Turnover Order"), *In re: Linden Center LLC*,  Case No. 23-41820-ess);

(b)    directing Defendants Ching Lam (*a/k/a* Henry Lam), Choy Ling Lam (*a/k/a* Rita Lam), Wei, Wei, & Co., LLP, and Skyline Capital Group Inc immediately:

      i.    to comply with the Agreed Order Approving Debtor's Application Directing the Preservation and Turnover of Documents Pursuant to Sections 541 and 542 of the Bankruptcy Code entered June 13, 2023 in the underlying core bankruptcy proceeding (*see* Dkt. No. 22, *In re: Linden Center LLC*,  Case No. 23-41820-ess);

      ii.    to preserve all property of the Debtor's estate, including the Debtor's books and records, including but not limited to cash disbursement journals, cash receipt journals, historical bank statements, general ledgers, tenants' receivable subsidiary ledgers, accounts payable subsidiary ledgers, insurance policies, historical financial statements, tax returns, leases, security deposits) whether in hard copy or electronic form;

      iii.     to surrender to the Debtor's President and Authorized Representative, Howard Konicov, all property of the Debtor's estate, including but not limited to the Books and Records (including but not limited to cash disbursement journals, cash receipt journals, historical bank statements, general ledgers, tenants' receivable subsidiary ledgers, accounts payable subsidiary ledgers, insurance policies, historical financial statements, tax returns) whether in hard copy or electronic form;

      iv.     to cease and desist from any attempts at collecting rents generated by the Debtor's real property located at 33-37 Farrington Street (a/k/a 34-20 Linden Place), Flushing, New York, 11354 (Block 4950 and Lot 18) (the "Premises");

      v.     to cease and desist from any attempts at managing, controlling, or interfering with the business affairs of the Debtor, the property of the Debtor's estate, or the Premises, including but not limited to discussing Debtor's sales efforts with existing tenants, potential purchasers, or other third parties;

      vi.     to direct all tenants and other third parties that attempt to contact any of the above-named Defendants about the affairs of the Debtor or the property of the Debtor's estate to communicate solely with the Debtor's President, Howard Konicov, concerning such matters going forward; and

      vii.     to vacate the Premises;

(c)     directing Defendant Wei, Wei, & Co., LLP immediately:

      i.     to identify the services they have provided, or continue to provide, to the Debtor, Prince USA Group LLC ("Prince") or any Defendant;

      ii.     to communicate transparently with the Debtor's President, Howard Konicov, concerning the Debtor's finances; and

      iii.     to provide the Debtor's President, Howard Konicov, any financial information concerning the Debtor in their possession, upon Mr. Konicov's request;

(d)     directing Defendant Skyline Capital Group Inc. immediately to provide the Debtor's President, Howard Konicov, any financial or insurance information or insurance policy-related documents concerning the Debtor in their possession, upon Mr. Konicov's request;

(e)     directing Defendants Ching Lam (*a/k/a* Henry Lam) and Choy Ling Lam (*a/k/a* Rita Lam) immediately to perform a full and accurate accounting of the Debtor's affairs for the period of November 17, 2017 to the present;

(f)     authorizing the Debtor immediately to change the locks to the business offices located at the Premises and refuse entry to the office to anyone other than Howard Konicov;

(g)     entering a money judgment against Defendants Ching Lam (*a/k/a* Henry Lam) and Choy Ling Lam (*a/k/a* Rita Lam) for monies had and received in an amount to be determined at trial plus interest, costs, attorneys' fees, and any other relief that the Court determines to be just and proper; and

(h)     entering a judgment of contempt against Defendants Ching Lam (a/k/a Henry Lam) and Choy Ling Lam (a/k/a Rita Lam) for failure to comply with the Court's June 13, 2023 Turnover Order.

Dated: June 20, 2023

Respectfully submitted,

**A.Y. STRAUSS LLC**

By:    *s/ Eric H. Horn*
Eric H. Horn, Esq.
Heike M. Vogel, Esq.
Jordan M. Engelhardt, Esq.
535 Fifth Avenue, 4th Floor
New York, New York 10017
Tel. (973) 287-5006
Fax  (973) 226-4104

*Attorneys for Plaintiff*